**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

JASON PHILLIPS,

                              Plaintiff,

        - v -                                          Civ. No. 9:09-CV-1328
                                                            (GTS/RFT)

LESTER WRIGHT, *Dr., Deputy Commissioner and Chief*
*Medical Officer*; JESUS FLORESCA, M.D., *Ulster Correctional Facility*;
 ZULMA, M.D., *Mid-Orange Correctional Facility*;
 SUSAN MUELLER, M.D., *Wallkill Correctional Facility*,

                              Defendants.

**APPEARANCES:**                          **OF COUNSEL:**

STOLL, GLICKMAN LAW FIRM          CYNTHIA H. CONTI-COOK, ESQ.
Attorney for Plaintiff
71 Nevins Street
Brooklyn, NY 12217

HON. ANDREW M. CUOMO              CHARLES J. QUACKENBUSH, ESQ.
Attorney General for the State of New York    Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, NY 12224

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

<u>**REPORT-RECOMMENDATION and ORDER**</u>

        Plaintiff Jason Phillips brings this civil rights action, pursuant to 42 U.S.C. § 1983, alleging

that Defendants violated his Eighth Amendment rights.  Dkt. No. 1, Compl.  In sum and substance,

Plaintiff claims that, during his custody with the New York State Department of Correctional

Services ("DOCS"), Defendants failed to surgically remove a lump from his back for a period of two

years, during which time the lump grew and he experienced extreme pain and discomfort.  *Id.*  On

January 22, 2010, Defendants filed a Motion to Dismiss, pursuant to FED. R. CIV. P. 12(b)(6), to

which Plaintiff, who at that time was proceeding *pro se*, filed a Response in Opposition.  Dkt. Nos. 12 & 18.  Plaintiff subsequently obtained counsel and was granted leave to file another response to replace his *pro se* Response.  Dkt. No. 19.  Shortly thereafter, Plaintiff filed a new Response in Opposition to Defendants' Motion to Dismiss along with a Cross-Motion to Amend the Complaint.  Dkt. No. 25.  Defendants oppose the Cross-Motion to Amend.  Dkt. Nos. 26-27.

For the reasons that follow, it is recommended that both Motions be **granted in part** and **denied in part**.

## I. BACKGROUND

The following facts are derived mainly from Plaintiff's Proposed Amended Complaint, which adds clarity and specifics to Plaintiff's *pro se* Complaint, but does not change its essential accusations nor causes of action.  *Compare* Dkt. No. 1, Compl. *with* Dkt. No. 25-3, Proposed Am. Compl.  Moreover, because Defendants object to Plaintiff's Cross-Motion to Amend on futility grounds only, *see* Dkt. No. 27, Defs.' Resp. in Opp'n to Pl.'s Mot. to Am., the same standard of review applies to both the Motion to Dismiss and the Motion to Amend.  *See infra* Part II.A.1-2.  Pursuant to that standard, we must accept Plaintiff's factual allegations as true in order to determine whether he has stated a facially plausible constitutional claim under § 1983.  Therefore, we can address both Motions concurrently by applying that standard to the allegations raised in both the Complaint and the Proposed Amended Complaint, which, as previously mentioned, are at a variance only in terms of their detail.

On September 21, 2007, Plaintiff was incarcerated at Ulster Correctional Facility ("Ulster"), and went to sick call to make his first complaint about a large swollen lump in his right shoulder.  Proposed Am. Compl. at ¶ 15.  Although Plaintiff did not complain of pain at that time, over the next

two months, the lump grew and the onset of pain began. *Id.* at ¶¶ 16-17. On November 8, 2007, Defendant Dr. Jesus Floresca requested, on Plaintiff's behalf, a referral for a consultation with a general surgeon, noting that Plaintiff had a "golf-sized mass" below his right scapula that was increasing in size, and that while such growth was consistent with a lipoma,[1] it should be removed due to its size and the pain it was causing. *Id.* at ¶ 18. Such referral was approved by proposed defendant APS Healthcare, Inc., a privately held company that contracts with DOCS to review requests for specialty care. *Id.* at ¶¶ 11 & 18. According to Plaintiff, requests for surgery and other procedures

> are electronically submitted from the facility providers to APS Healthcare for approval. Requests may be approved, disapproved, or returned to the facility provider for further information. If a request is disapproved, the facility provider may appeal of the Regional Medical Director (or "RMD"). Upon information and belief, and based on the attached selection of medical records, APS Healthcare was involved with the denials of surgical excision of plaintiff's painful and growing lipoma.

*Id.* at ¶ 11.

On December 18, 2007, Plaintiff consulted with a general surgeon about the lump, who noted that the size of the lump was 8cm x 4cm x 3cm and recommended its surgical removal. *Id.* at ¶ 19. On December 19, 2007, Dr. Floresca commenced procedures to prepare Plaintiff for surgery and Plaintiff had a medical hold placed on his transfer status so that he would remain at Ulster until after the surgery was completed. *Id.* at ¶ 20. Also on that date, Dr. Jordan Laguio[2] electronically requested that surgery be scheduled to excise the lump. *Id.* at ¶ 21. However, on December 20,

---

[1] A lipoma is a "benign tumor composed chiefly of fat cells." THE AMERICAN HERITAGE MEDICAL DICTIONARY (Rev. ed. 2007).

[2] Dr. Laguio is not a named Defendant in this action.

2007, "Central Health Services"[3] denied the procedure because "lipoma surgery is generally considered cosmetic." *Id.* at ¶ 22. Such denial was discussed with Plaintiff on December 27, 2007; at that time the medical hold on his transfer was lifted and the lump was measured at 8cm x 8.5cm. *Id.* at ¶ 23. Dr. Floresca took no further action regarding the surgical excision of Plaintiff's lump. *Id.* at ¶ 24.

On March 6, 2008, after Plaintiff's transfer to Mid-Orange Correctional Facility ("Mid-Orange"), he went to emergency sick-call at midnight and complained of pain in his right shoulder, for which he was given Motrin. *Id.* at ¶ 25. On March 21, 2008, proposed defendant Dr. Zamilus[4] examined Plaintiff and measured the lump at 10cm x 8cm, took photographs of it, and recommended to Defendant Dr. Wright that it be surgically removed. *Id.* at ¶ 26. Defendant Wright denied the request. *Id.* at ¶ 27. Dr. Zamilus took no further action regarding Plaintiff's growth.

On May 29, 2008, Plaintiff complained of pain and difficulty sleeping, for which the nursing staff gave him Ibuprofen. *Id.* at ¶ 29. On June 30, 2008, Plaintiff again complained of pain and was given Motrin. *Id.* at ¶ 30. Dr. Zamilus saw Plaintiff on July 18, 2008, and again made note of his pain. Plaintiff requested contact information for someone regarding the multiple denials of the requested surgery. *Id.* at ¶ 31. On August 11, 2008, and again on September 4, 2008, Plaintiff complained of pain caused by the lump and was given Ibuprofen. *Id.* at ¶ 33. On September 12,

---

[3] It is not clear from the Proposed Amended Complaint whether Central Health Services is another name for APS Healthcare or if it is another entity altogether. *See generally* Proposed Am. Compl.

[4] In the original Complaint, Plaintiff named "Dr. Zulma" as a Defendant. Dkt. No. 1. After the Summons for Dr. Zulma was returned unexecuted, Dkt. No. 9, Plaintiff explained in a letter to the Court that he had misspelled the name and clarified that he intended to name "Dr. Zamilus" as a Defendant. Dkt. No. 13, Lt., dated Jan. 22, 2010. A Summons was re-issued with the correct spelling but was again returned unexecuted. Dkt. Nos. 14 & 23. In his Response to Defendants' Motion to Dismiss/Cross-Motion to Amend, Plaintiff indicates that his spelling of the name Dr. Zamilus "is an approximation" based on barely legible medical notes which were attached to both the Complaint and the Proposed Amended Complaint. Dkt. No. 25, Pl.'s Mot. to Am. at p. 1 n.1. To date, Dr. Zamilus has not been served with process.

2008, Dr. Zamilus measured the lump at 10cm x 10cm x 3cm, and again referred Plaintiff for surgery. *Id.* at ¶ 34. Plaintiff's medical record, dated September 25, 2008, indicates that he was referred to surgery for lipoma excision and also given Ibuprofen for his pain. *Id.* at ¶ 35. Less than a month later, Plaintiff was transferred out of Mid-Orange with the lump still in his back. *Id.* at ¶ 36.

On October 20, 2008, Plaintiff was transferred to Wallkill Correctional Facility and, during his intake examination, told a nurse that the lump was painful and growing. *Id.* at ¶ 37. A nurse examined Plaintiff on October 22, 2008, and noted that the lump was 10cm x 9cm in size. *Id.* at ¶ 38. Defendant Dr. Susan Mueller examined Plaintiff that same day and prescribed Naproxen and a warm compress for pain management. *Id.* at ¶ 39. By February 24, 2009, Plaintiff's lump was measured at 13cm x 9cm and another request for surgical removal was submitted. *Id.* at ¶ 41. On March 5, 2009, the request for surgical removal was denied by APS Healthcare and by proposed defendant Dr. Timothy Whalen, Regional Medical Director ("RMD"), whose duties included reviewing appeals from denials of surgical requests. *Id.* at ¶¶ 12 & 42.

On July 30, 2009, the lump was measured at 11cm x 11cm and Dr. Mueller examined Plaintiff, noting that Plaintiff was "made aware of RMD['s] decision" and that there was "nothing more [she could] offer." *Id.* at ¶ 44. Plaintiff went to sick call again on August 6, 2009, complaining of pain and further stating that the Naproxen was ineffective and aggravating a liver problem. Plaintiff saw Dr. Mueller, who discontinued Naproxen and requested another surgical consultation on Plaintiff's behalf, noting that, at that point, he had been denied surgery four times. *Id.* at ¶ 45. In her August 6, 2009 Consultation Request, Mueller wrote that Plaintiff was

> referred for [an] extremely painful mass arising from [his right] scapula which has continued to increase in size (now is 15 cm x 11 cm). [I] [a]m concerned that this

> could be a liposarcoma due to painful nature of [the] mass and rapid growth rate (lipomas are not painful). [Inmate] repeatedly in sick call because of pain, inability to sleep, difficulty reaching behind his back and raising his arm.

*Id.* at ¶ 46.

Mueller's request was entered electronically, approved, and Plaintiff met with a consultant on August 24, 2009, who recommended that an excision be performed soon.  *Id.* at ¶¶ 46-47.

Plaintiff's lipoma was surgically removed on September 25, 2009, at Albany Medical Center, after which a biopsy confirmed that the growth was a benign fatty tissue.  *Id.* at ¶ 48.  Plaintiff has a six-inch long scar on his back from the excision and, based on advice from his current medical providers, has continued to restrict the movement in his right arm.  *Id.* at ¶ 50.  Plaintiff contends that

> [t]he significance of the delay on the surgery has heightened the risk that plaintiff will suffer from another lipoma, there is a greater risk of damage to the surrounding tissue as a result of the size the lipoma was allowed to grow, there is a greater risk of fluid accumulating in the cavity left by the removal of the fatty-lipoma tissue, and potential irreversible injury to nerves and tissues in the structures surrounding the lipoma cavity.

*Id.* at ¶ 50.

## II.  DISCUSSION

### A.  Standards of Review

#### 1.  *Motion to Dismiss*

On a motion to dismiss, the allegations of the complaint must be accepted as true.  *See Cruz v. Beto*, 405 U.S. 319, 322 (1972).  The trial court's function "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof."  *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980).  "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

"Generally, in determining a 12(b)(6) motion, the court may only consider those matters alleged in the complaint, documents attached to the complaint, and matters to which the court may take judicial notice." *Spence v. Senkowski*, 1997 WL 394667, at *2 (N.D.N.Y. July 3, 1997) (citing *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991)).  Moreover, "even if not attached or incorporated by reference, a document 'upon which [the complaint] *solely* relies and which is *integral to the complaint*' may be considered by the court in ruling on such a motion." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) (emphasis added).

The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint.  *See Retail Clerks Intern. Ass'n, Local 1625, AFL-CIO v. Schermerhorn*, 373 U.S. 746, 754 n. 6 (1963); *see also Arar v. Ashcroft*, 532 F.3d 157, 168 (2d Cir. 2008).  Nevertheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937, 1949 (2009).  Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id.* (citation omitted).

A motion to dismiss pursuant to Rule 12(b)(6) may not be granted so long as the plaintiff's complaint includes "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, __ U.S. __ 129 S.Ct. at 1950 (citing *Twombly*).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, __ U.S. __ 129 S.Ct. at 1949.  This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

unlawfully." *Id.*  Thus, in spite of the deference the court is bound to give to the plaintiff's

allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts [which he or

she] has not alleged or that the defendants have violated the . . . laws in ways that have not been

alleged." *Assoc. Gen. Contractors of California, Inc. v. California State Council of Carpenters,* 459

U.S. 519, 526 (1983).  The process of determining whether a plaintiff has "nudged [his] claims . .

. across the line from conceivable to plausible," entails a "context-specific task that requires the

reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, __ U.S.

__ 129 S.Ct. at 1950-51.

### 2.  *Motion to Amend*

FED. R. CIV. P. 15(a) states, in pertinent part, that leave to amend a pleading should be

"freely given when justice so requires." *Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir. 2003).  Indeed,

leave to amend should be denied only in the face of undue delay, bad faith, undue prejudice to the

non-movant, futility of amendment, or where the movant has repeatedly failed to cure deficiencies

in previous amendments.  *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Kropelnicki v. Siegel*, 290

F.3d 118, 130 (2d Cir. 2002) (citing *Chill v. Gen. Elec. Co.*, 101 F.3d 263, 271-72 (2d Cir. 1996)).

District courts are vested with broad discretion to grant a party leave to amend the pleadings.  *See*

*Local 802, Assoc. Musicians of Greater New York v. Parker Meridien Hotel*, 145 F.3d 85, 89 (2d

Cir. 1998).

In this instance, Defendants assert that Plaintiff's proposed claims are futile and, as such, his

Motion to Amend should be denied.  Dkt. No. 27, Defs.' Resp. in Opp'n to Pl.'s Mot. to Am.  The

Second Circuit has stated that where futility is raised as an objection to the motion to amend, and

> [w]here it appears that granting leave to amend is unlikely to be productive, . . . it is
> not an abuse of discretion to deny leave to amend.  *See, e.g.*, *Foman v. Davis*, 371

U.S. at 182, 83 S.Ct. at 230 (denial not abuse of discretion where amendment would be futile); *Health-Chem Corp. v. Baker*, 915 F.2d 805, 810 (2d Cir.1990) ("where . . . there is no merit in the Proposed amendments, leave to amend should be denied"); *Billard v. Rockwell International Corp.*, 683 F.2d 51, 57 (2d Cir.1982) (denial not abuse of discretion where plaintiff had had "access to full discovery" in a related case).

*Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993).

As futility is an appropriate basis for denying leave to amend, such denial should be contemplated within the standards necessary to withstand a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6). *Dougherty v. Town of North Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002) (citing *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991)); *see supra* Part I.A. As noted above, on a motion to dismiss, the allegations of the complaint must be accepted as true. *See Cruz v. Beto*, 405 U.S. at 322.

### B. Eighth Amendment Claims

The Eighth Amendment to the United States Constitution prohibits cruel and unusual punishment. Prohibited punishment includes that which "involve[s] the unnecessary and wanton infliction of pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). To state a claim for denial of medical care, a prisoner must demonstrate (1) a serious medical condition and (2) deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 834-35 (1994); *Hathaway v. Coughlin ("Hathaway I")*, 37 F.3d 63, 66 (2d Cir. 1994). The first prong is an objective standard and considers whether the medical condition is sufficiently serious. The Second Circuit has stated that a medical need is serious if it presents "'a condition of urgency' that may result in 'degeneration' or 'extreme pain.'" *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Hathaway I*, 37 F.3d 63, 66 (2d Cir. 1994)). Among the relevant factors to consider are "[t]he existence of an injury that a reasonable doctor or patient would find important

*-9-*

and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d at 702 (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992)).

The second prong is a subjective standard requiring a plaintiff to demonstrate that the defendant acted with the requisite culpable mental state similar to that of criminal recklessness. *Wilson v. Seiter*, 501 U.S. 294, 301-03 (1991); *Hathaway I*, 37 F.3d at 66. A plaintiff must demonstrate that the defendant acted with reckless disregard to a known substantial risk of harm. *Farmer v. Brennan*, 511 U.S. at 836. This requires "something more than mere negligence . . . but something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* at 835; *see also Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996) (citing *Farmer*). Further, a showing of medical malpractice is insufficient to support an Eighth Amendment claim unless "the malpractice involves culpable recklessness, i.e., an act or a failure to act by the prison doctor that evinces 'a conscious disregard of a substantial risk of serious harm.'" *Chance v. Armstrong*, 143 F.3d at 702 (quoting *Hathaway v. Coughlin ("Hathaway II")*, 99 F.3d 550, 553 (2d Cir. 1996)); *see also Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003) (citations omitted).

### 1. *Serious Medical Need*

Defendants assert that Plaintiff's Eighth Amendment claims must fail because he does not allege a serious medical condition. Plaintiff contends that the lump in his back constituted a serious medical condition because of its size and location, the substantial pain it caused, and its interference with his ability to function. On that last point, Plaintiff states that the growth interfered with his ability to move his right arm, stand up straight, lift his arms, lie on his back, and sleep. Dkt. No. 25, Pl.'s Mem. of Law at p. 20.

*-10-*

It is alleged that after the lump was surgically removed, it was confirmed that the growth was a non-cancerous lipoma.  Proposed Am. Compl. at ¶ 48.  Nonetheless, such a medical condition might still be sufficiently serious under the Eighth Amendment if it was extremely painful.  *Chance v. Armstrong*, 143 F.3d at 702.  In his original Complaint, Plaintiff stated that he "suffered countless nights in excruciating pain, and days when the acute pain would literally bring plaintiff to his knees."[5]  Dkt. No. 1, Compl. at ¶ 11.  Moreover, Plaintiff alleges that several medical professionals opined that given such pain and restricted movement, the growth should be removed.  These allegations of substantial pain and significant affect on Plaintiff's daily life are sufficient to pass muster under the objective prong of the Eighth Amendment standard at the pleading stage.  *Chance v. Armstrong*, 143 F.3d at 702; *see also Bolden v. Zernicke*, 1999 WL 731780, at *7 (N.D. Ill. Aug. 30, 1999) (finding a question of fact existed when the record evidence showed that a lipoma restricted plaintiff's range of movement and two specialists recommended that the growth be removed).

## 2.  *Deliberate Indifference*

Plaintiff alleges that the multiple rejections of his requests for surgery constituted deliberate indifference on the part of those who denied such requests.  In addition, Plaintiff alleges that Defendants who made recommendations for surgery on his behalf were also deliberately indifferent to his serious medical needs because they did not take steps to "appeal" the denials of such requests made by their superiors.

### a.  Dr. Jesus Floresca, Dr. Zamilus, and Dr. Mueller

---

[5] Plaintiff's Proposed Amended Complaint also includes allegations of constant pain and suffering.  *See* Proposed Am. Compl. at ¶¶ 51, 53, 56, 61-62, & 67.

Plaintiff claims Drs. Floresca, Zamilus, and Mueller were deliberately indifferent to his medical needs based on their responses to his requests for treatment. Plaintiff alleges that Defendant Dr. Floresca requested a referral for a consultation with a general surgeon on his behalf, which was approved. Proposed Am. Compl. at ¶ 18. The consultant recommended Plaintiff get surgery to remove the growth and Floresca commenced procedures to prepare Plaintiff for surgery, however, on December 20, 2007, the request for surgery was denied by Central Health Services because it was deemed to be cosmetic in nature. *Id.* at ¶¶ 20 & 22. Plaintiff alleges that Dr. Floresca took no further action regarding the surgical excision of the lump and was deliberately indifferent because he "did not appeal the decision from Central Health Services on December 20, 2007 that denied the excision of plaintiff's painful and growing lump." *Id.* at ¶ 68.

With respect to Dr. Zamilus, Plaintiff alleges that he examined Plaintiff on March 21, 2008, and then submitted a request to Dr. Wright for surgical removal, which was denied. Proposed Am. Compl. at ¶¶ 26-27. On September 12, 2008, Dr. Zamilus again made a referral for surgery on Plaintiff's behalf, which was also denied. *Id.* at ¶¶ 34-35.

As per Defendant Dr. Susan Mueller, Plaintiff alleges that she examined him two days after his transfer to Mid-Orange on October 20, 2008, and prescribed him Naproxen and a warm compress for his shoulder pain. *Id.* at ¶¶ 37-39. Plaintiff asserts that another request for surgery was submitted on or about February 24, 2009, but he does not allege who made such request, however, Plaintiff alleges that Dr. Mueller examined him on July 30, 2009, and noted that Plaintiff was made aware of proposed Defendant Whalen's denial of the request and that there was "nothing more [she could] offer him." *Id.* at ¶ 41. These allegations suggest that it was Mueller who made the request on February 24, 2009. In any event, notwithstanding the denial of such request, after meeting with

*-12-*

Plaintiff on August 6, 2009, Mueller requested yet another surgical consultation. *Id.* at ¶¶ 45-46. That request was approved and, as a result, Plaintiff ultimately had the growth removed on September 25, 2009. *Id.* at ¶¶ 47-48.

These allegations do not carry a hint of deliberate indifference with respect to Drs. Floresca, Zamilus, or Mueller. To the contrary, Plaintiff alleges that they accurately diagnosed him, provided pain medication, and requested the surgery he allegedly needed. The fact that such requests were denied does not suggest a deliberate indifference to his medical needs, nor does the allegation that Drs. Floresca and Mueller failed to "appeal" the denials to the requests they submitted. In that respect, it is alleged that both Drs. Mueller and Zamilus renewed their requests for surgery despite being initially denied, which actions might be considered an appeal in fact, if not in form.

Moreover, there is absolutely no allegation that Floresca, Zamilus, or Mueller was personally involved in any alleged deprivation of medical attention. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.") (citations omitted). It simply does not follow that a doctor without final authority to authorize surgery can be held liable when he or she makes a request for surgical intervention that is denied by his or her superior. *See Benjamin v. Schwartz*, 299 F. Supp. 2d 196, 199-200 (S.D.N.Y. 2004) (granting motion to dismiss prisoner's primary care doctor when his only allegation was that the doctor failed to encourage the orthopedic surgeon to perform surgery sooner). Thus, Plaintiff's claims against Floresca, Zamilus, and Mueller are facially implausible and therefore futile.

Therefore, it is recommended that the Motion to Dismiss Plaintiff's claims against Defendants Floresca and Mueller be **granted** and Plaintiff's Cross-Motion to Amend be **denied** as

per his proposed claims against Defendants Floresca, Mueller, and proposed defendant Zamilus (a/k/a unserved Defendant Zulma).

b. Dr. Whalen, Dr. Wright, and APS Healthcare, Inc.

Plaintiff claims that Dr. Whalen, Dr. Wright and APS Healthcare, Inc., directly prevented him from receiving the care he needed when they denied the aforementioned requests for surgery submitted on his behalf. Specifically, Plaintiff alleges deliberate indifference based upon Wright's denial of the requests for surgical excision of the lump made by Dr. Floresca on December 20, 2007, Dr. Zamilus on March 21, 2008, and based upon the denial of Dr. Mueller's March 5, 2009 request for surgical removal of the growth by both Dr. Whalen and APS Healthcare, Inc. Proposed Am. Compl. at ¶¶ 54-56 & 62.

Plaintiff contends that Whalen, Wright, and APS Healthcare consciously disregarded and/or ignored his serious medical need based upon a blanket policy of categorizing all lipoma removal surgeries as cosmetic in nature. These allegations are sufficient to state a valid claim under the Eighth Amendment and are therefore not futile. *Chance v. Armstrong*, 143 F.3d at 702; *see also, e.g., Jones v. Westchester Cnty. Dep't of Corrs. Med. Dep't*, 557 F. Supp. 2d 408, 415-16 (S.D.N.Y. 2008) (holding that plaintiff's allegation that defendants refused his needed surgery in order to avoid costs stated a valid claim under the Eighth Amendment) (citing cases); *Rush v. Artuz,* 2004 WL 1770064, at *10 (S.D.N.Y. Aug. 6, 2004) (finding a question of fact existed where defendant was denied surgery despite multiple requests made on plaintiff's behalf by various medical personnel). Discovery may reveal that such denials did not constitute deliberate indifference, but rather, were rational medical decisions based on the information available at the time. However, at this stage of the litigation, Plaintiff need not *demonstrate* deliberate indifference on their part, rather, he must

*-14-*

simply plead sufficient factual allegations so as to create a plausible claim of deliberate indifference. This Plaintiff has done.[6]  Therefore, it is recommended that the Motion to Dismiss be **denied** as against Defendant Wright, and that the Motion to Amend be **granted** with respect to Plaintiff's proposed claims against Wright, Whalen, and APS Healthcare.

### C.  Unserved Defendant

Under Federal Rule of Civil Procedure 4(c)(1), the plaintiff is responsible for service of the summons and complaint for each defendant within a specified time period.  Specifically, the plaintiff must effectuate service of process within 120 days of the filing of the complaint.  FED. R. CIV. P. 4(m).[7]  Failure to properly serve any defendant in accordance with the Federal Rules will result in the court, upon motion or on its own initiative, to dismiss the case without prejudice as to that defendant.  *Id.*

In this case, there is no indication that the Defendant named "Zulma" in the Complaint and "Zamilus" in the Proposed Amended Complaint has been properly served.  Although the courts must afford plaintiffs notice before they may dismiss a claim for failure to serve a defendant, FED. R. CIV. P. 4(m), in this case, because Plaintiff's claims against this person lack merit, granting Plaintiff the opportunity to properly serve him would be futile.  Thus, it is recommended that Plaintiff's claims against Defendant Zulma be **dismissed**.

---

[6] We note that Plaintiff will need to demonstrate that APS Healthcare, Inc., a private corporation, was acting in concert with a state actor when it allegedly violated his constitutional rights.  Because Plaintiff alleges that APS Healthcare is under contract with DOCS, he has made a facially valid allegation that such entity acted under color of state law.  *See Sykes v. McPhillips*, 412 F. Supp. 2d 197, 202 (N.D.N.Y. 2006) (citing cases).

[7] Under the Local Rules for the Northern District of New York, a plaintiff must effectuate service within sixty (60) days.  N.D.N.Y.L.R. 4.1(b).

### III.  CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendants' Motion to Dismiss (Dkt. No. 12) be **granted in part** and **denied in part** in accordance with the above opinion; and it is further

**RECOMMENDED**, that Defendants Floresca, Zulma (a/k/a Zamilus), and Mueller be dismissed from this action; and it is further

**RECOMMENDED**, that Plaintiff's Cross-Motion to Amend (Dkt. No. 25) be **granted in part** and **denied in part** in accordance with the above opinion; and it is further

**RECOMMENDED**, that should the District Court adopt the above recommendations, that Plaintiff be required to file a new Amended Complaint **within thirty (30) days of the date of such adoption** that is consistent with the recommendations made herein; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), & 6(e).

Date:   August 11, 2010
        Albany, New York

_____
RANDOLPH F. TREECE
United States Magistrate Judge